JOHN VANDERMULEN, Jr., Respondent, *v.* JANE VANDERMULEN, Appellant.

LEONARD DOELMAN, Respondent, *v.* SAME, Appellant.

MYRON DOELMAN, Respondent, *v.* SAME, Appellant.

Where, under and by virtue of proceedings *in invitum* under the statute, land is condemned to the use of a railroad, the transaction when perfected operates as a statute transfer to the corporation, and in a legal sense it is a purchase and sale of the land or of the interest authorized to be taken.

Defendant and her three sons entered into copartnership and purchased for firm purposes certain premises, taking the title as tenants in common; the consideration, however, was paid by defendant. Upon dissolution of the firm, the sons conveyed their interest in the premises to defendant, who leased them for ten years to two of the sons, with a reservation to the lessor of a right to terminate the lease on sale of the premises. Defendant covenanted, in case the lease was so terminated, or if the premises should at any time be sold she would, after deducting the sum advanced by her on the original purchase, pay over to each of her sons one-fourth of the residue. After the expiration of the lease, a small portion of the premises was taken by proceedings *in invitum* for railroad purposes, and defendant received the compensation awarded, which was more than sufficient to reimburse to her what she had advanced. *Held,* that the contract applied to a sale wherever made, whether during the existence of the lease or at any time thereafter; that the taking was a sale within the meaning of the contract; that the conveyance by the sons was a good consideration for the covenant; and that a sale of the whole premises was not a condition upon which defendant's liability to account depended; but that liability was created whenever, by a sale of a whole or any part, the proceeds exceeded the sum advanced.

Also, *held,* that a separate action was maintainable by each of the sons to recover his share of the surplus.

Defendant, after notice by the railroad company of its intention to take the land, leased the premises to another son for the purpose of diverting a part of the compensation to be awarded, from herself to the lessee; and an award was made to the latter for the value of his leasehold interest. *Held,* that the amount so awarded less the cost of new buildings and repairs made by the lessee was justly regarded as compensation received by defendant.

(Argued December 20, 1887; decided January 17, 1888.)

APPEALS from judgments of the General Term of the Superior Court of Buffalo, entered upon orders made May 9, 1885, which affirmed judgments in favor of plaintiffs entered upon verdicts.

Each of these actions was brought to recover of defendant a sum which plaintiff claimed he was entitled to under the agreement hereinafter set forth.

In 1870 defendant and her three sons, the plaintiffs, entered into a copartnership for the purpose of carrying on the grocery business in the city of Buffalo. Certain premises in that city were purchased for the purposes of the business and were con-

veyed to the partners as tenants in common; defendant advanced the whole or nearly all of the purchase-money. In December, 1871, the firm was dissolved, the sons conveyed their interest in the real estate to their mother, who, at the same time, executed a lease thereof for a term of ten years to two of them at an annual rental of $350, the lessor reserving a right to terminate the lease on sale of the premises. An agreement, of the material portions of which the following is a copy, was also executed by the parties

" Articles of agreement, made and executed this 1st day of December, 1871, by and between Jane Vandermulen, wife of John Vandermulen, city of Buffalo and the county of Erie, and state of New York, of the first part, and Myron Doelman, and Leonard and John Vandermulen, Jr., of the same place, of the second part:

"Whereas, on or about the 8th day of June, 1870, the parties hereto purchased a certain lot or parcel of land in the city of Buffalo.

"And, whereas, the parties hereto, having on or about the time mentioned in the said deed, entered into a copartnership to carry on the grocery and provision business on said premises and for other purposes, which said partnership has been dissolved by mutual consent.

"And, whereas, pursuant to an agreement to that effect, the parties of the second part having released and conveyed all their interest in and to said lands and premises to the party of the first part hereto, and pursuant to such agreement also, said party of the first part has made and executed to said Myron Doelman and John Vandermulen, Jr., a lease of said lands, premises and hereditaments for the term of ten years, from the           day of           1871, at the yearly rent therein specified, which said lease may be terminated as therein provided, reference being hereby made to said lease for greater certainty.

"And, whereas, the said agreement, transfers and conveyances were made at the instance and request of the party of the first part hereto.

"Now, therefore, these presents witnesseth, as a further agreement between said parties, and in consideration of the sum of $1, lawful money of the United States of America, to the party of the first part in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, she the said party of the first part, hereby covenants, promises and agrees, to and with the parties of the second part, that should said lease become terminated before the expiration of the ten years therein named, by the sale of said premises therein provided, or if said premises be at any time sold, she the said party of the first part will account for and pay over to the said parties of the second part each, one-fourth of all moneys received from the purchase-price of said lands and premises, over and above the sum of $4,250, which last named sum, together with the remaining one-fourth of all moneys received, over and above the same, shall be and remain the property of the party of the first part."

At the expiration of the lease defendant went into possession of the premises and subsequently, under the circumstances stated in the opinion, leased a portion thereof to another son, Henry Vandermulen, who erected and repaired buildings thereon. In June, 1883, the New York, Lake Shore and Buffalo Railway Company instituted proceedings under the general railroad act, for the condemnation of a part of said premises, making defendant and Henry Vandermulen parties; an award was made therein to defendant of $6,300 and to Henry Vandermulen of $1,200, which awards were paid.

Further facts appear in the opinion.

*James M. Humphrey,* for appellant. A joint instead of separate action should have been brought. (Code Civ. Pro., §§ 447, 448 ; *Coster* v. *N. Y. & Erie R. R. Co.,* 6 Duer, 43 ; *Kirk* v. *Young,* 2 Abb. 453 ; *Dean* v. *Whiton,* 16 Hun, 203 ; 66 Barb. 402 ; *McCotter* v. *Lawrence,* 4 Hun, 107 ; *S. C.,* 6 N. Y. Sup. Ct. [T. & C.] 392 ; *Muzzy* v. *Whitney,* 10 Johns. 226 ; *Westcott* v. *King,* 14 Barb. 52 ; *Yelverton* v. *Sheldon,* 2 Sandf. Ch. 481.) The several instruments made

Statement of case.

between the same parties of the same date, and relating to the same subject-matter may be read and interpreted together. (*Mott* v. *Ritchmyre*, 57 N. Y. 49, 65; *Marsh* v. *Dodge*, 66 id. 533; *Mining Co.* v. *Mathews*, 76 id. 146; *Brittania Co.* v. *Zingsen*, 48 id. 247.) To determine the true construction of a contract it is proper to inquire into the intention of the parties which should be carried into effect if consistent with the principles of law. (*Blossom* v. *Griffin*, 13 N. Y. 569; *Griffiths* v. *Hardenberg*, 41 id. 464; *Field* v. *Munson*, 47 id. 221; *Bank of Buffalo* v. *Myles*, 73 id. 335; *Dodge* v. *Harden*, 31 id. 239; *Cahill* v. *Palmer*, 45 id. 484; 37 Penn. 201; 56 Barb. 21.) The want of consideration is a perfect defense and may be inquired into, notwithstanding the contract is under seal. (*Ins. Co.* v. *Watson*, 59 N. Y. 390; *Anthony* v. *Harrison*, 14 Hun, 198, 205; Code of Civ. Pro., 840.) The assent of the parties must be mutual, reciprocal, concurrent and must be to the same thing and the same sense. (*Fitch* v. *Snedikor*, 38 N. Y. 248; 40 Iowa, 402; 50 Ala. 446; 2 Sandf. 133.) The condemnation of a portion of the defendant's premises by the railway, by proceedings for that purpose, under the statute, was not a sale thereof, in the proper meaning of that term as used in the agreement or as contemplated, but was a forcible taking from the defendant, under the power given the railway by the statute, and against her will or consent, and therefore the plaintiff can base no right of recovery thereon. (*Parks* v. *City of Boston*, 15 Pick. 205; *Williamson* v. *Berry*, 8 How. [U. S.] 544; *Butler* v. *Thompson*, 2 Otto, 412, 414; *Gardner* v. *Lam*, 12 Allen, 39; Pierce on Railroads, 157, 159, 210, 211; 5 Wait's Actions and Defenses, 288, 289.)

*George J. Sicard* for respondents. The railroad corpora tion, by its proceedings, acquired the title to the land sought to be taken "for a road-way and for necessary buildings, depot and freight grounds." (Laws 1850, chap. 140, § 13; Laws 1854, chap. 282, § 17; Laws 1857, chap. 444, § 2.) The transaction by which the appellant parted with title and pos-session of the premises in question, is properly to be considered

as a sale of said premises within the meaning of the agreement in evidence. (*Sweet* v. *B. N. Y. & P. R. R. Co.*, 79 N. Y. 293 ; Mills on Em. Domain, § 50; *Brooklyn Park* v. *Armstrong*, 45 N. Y. 234; *Rexford* v. *Knight*, 11 id. 308; *Heyward* v. *Mayor, etc. of N. Y.* 7 id. 314; 2 Kent Com. 282; *Nicoll* v. *N. Y. & E. R. R. Co.* 12 N. Y. 121, 130; *Woodworth* v. *Payne*, 74 id. 201; *Buff. Pipe Line* v. *N. Y., etc., R. R. Co.*, 10 Abb. N. C. 113; *Murray* v. *County Com'rs.*, 12 Metc. 455; *Hazen* v. *B. & M. R. R. Co.*, 2 Gray, 580; Wood's R. Law, 768, 769, *note*; 2 Preston on Estates, 50; Mills on Em. Domain, § 50; *De Varaigue* v. *Fox*, 2 Blatchf. 95; *Beal* v. *N. Y. C. & H. R. R. R. Co.*, 3 How. Pr. [N. S.] 333; *Terry* v. *N. Y. C. & H. R. R. R. Co.*, 67 How. Pr. 439; *Mad. Ave.* v. *Bap. Ch.* 46 N. Y. 131; Abbott's Law Dic. Tit. "Sale; 1 Greenleaf on Evidence, 265.) The taking of the land by a railroad company is a purchase. Even if only an easement be taken, it is the taking of an interest, and a most vital one in the property and the award is a purchase-price. (*Parks* v. *Boston*, 15 Pick. 198; *In re Munson*, 29 Hun, 325.) The contract in question is under seal and no defense of want of consideration is clearly pleaded in the defendant's answer. (*Dubois* v. *Hermance*, 56 N. Y. 673.) It recites a consideration and its payment. Though the contract may be disputed, the defense of want of consideration cannot be set up. (*Hebbard* v. *Haughian*, 70 N. Y. 54.) The deed and agreement of December 1, 1871, were one transaction. (*Doty* v. *Wilson*, 14 John. 378; *Marie* v. *Garrison*, 83 N. Y. 14–26; *Andrews* v. *Pontue*, 24 Wend. 284.) In proceedings to acquire land for a public use the value of the land is the measure of damages, and if the ownership of the property is divided between a landlord and his tenant, each will be entitled to a portion of the compensation. (*In re William and Anthony Sts.*, 19 Wend. 678–684; *In re New Reservoir*, 1 Sheld. 408; Mills on Em. Domain, § 68.)

ANDREWS, J. The defense that the contract was altered after its execution by the interlineation of the words "or if

said premises be at any time sold," was submitted to the jury
and the finding of the jury adversely to this contention, con-
cludes the defendant. The finding, moreover, is supported
by the weight and preponderance of testimony.

The principal question relates to the construction of the
clause in the contract in which the words referred to are
incorporated, and which provides "that should said lease
become terminated before the expiration of the ten years
therein named, by the sale of the said premises therein pro-
vided, or if said premises be at any time sold, the said party
of the first part will account for and pay over to the said
parties of the second part, each one-fourth of all moneys
received from the purchase-price of said lands and premises,
over and above the sum or $4,250, which last named sum,
together with the remaining one-fourth of all moneys received,
over and above the same, shall be and remain the property of
the party of the first part." The principal contention on the
part of the defendant is, that the sale contemplated in this
clause was a voluntary sale and that the obligation on her part
to account for the proceeds of the land "in case of a sale,"
does not apply to the compensation awarded to and received
by her on the taking by the New York, West Shore and Buf-
falo Railroad Company of a portion of the premises for rail-
road uses by proceedings *in invitum*, under the statute. What-
ever may be the true meaning of the word *sale* as used in the con-
tract, it is clear that the transaction by which land is condemned
to the use of a railroad, operates when perfected as a statute
ransfer of the title to the corporation and in a legal sense is a
purchase of the land, or an interest in the land by the
corporation for the price ascertained by the constitu-
tional method. (SHAW, Ch. J.; *Parks* v. *City of Boston*,
15 Pick. 198.) All private titles are subject to be affected
by this supreme power of the state, and unless the parties
voluntarily agree, the statute steps in and makes an agree-
ment between the owner and the corporation and enforces

its performance. The assent of the owner to the particular transaction is not affirmatively required, but, in theory, the owner assents to this exercise of sovereign power and takes the compensation awarded as a substitute for the land or such interest in it as the law authorizes to be taken. Whether the taking by the railroad company in this case was a sale within the meaning of the contract, does not at all depend, we think, upon the exact nature of the interest the company acquired under the proceedings. It, at the least, acquired a title commensurate with its corporate existence as fixed in its articles, or as it might be extended by legislation, and this title also would, under the statute, vest in a new corporation which might be organized for the purchase of the property and franchises of the original corporation under a judgment or decree of the court. (Chap. 140, Laws of 1850, §§ 13, 18; Chap. 282, Laws of 1854, § 1; Chap. 444, Laws of 1857, § 1.) The proceedings operated as a sale of the property taken and a purchase thereof by the company, and the interest acquired, whatever its exact legal character, was scarcely less than a fee. If a technical reversion remained in the defendant, the interest was so remote that its value is scarcely appreciable.

In determining whether the compulsory taking by the railroad company was a sale within the contract, the surroundings may be considered. The dissolution of the partnership between the defendant and her three sons was the occasion of the contract. The members of the firm at the commencement of the business had purchased the premises occupied by the firm, for the consideration of $4,000, and took the title as tenants in common. The consideration was paid mainly, if not wholly, by the defendant. It is inferable that, in December, 1871, when the contract was made, it was contemplated that the property would advance in value. Three separate instruments were executed at the same time, viz.: (1) A deed from the three sons to the defendant of their interest in the land; (2) a lease of the premises from the defendant to two of the sons for ten years at an annual rent of $350, with a reservation to the lessor of a right to terminate the lease on a sale of the

premises; (3) the contract in question, which secured to the three sons in case of a sale by the mother of the land, a proportion of the purchase-money equivalent to their original interest in the land, subject, however, to the provision that the mother should first be reimbursed the advances made by her on the original purchase. This paraphrase of the contract is, we think, justified by its language read in connection with the surrounding circumstances. The main purpose evidently was that the mother should be secured for her advances and have the use of the land, but if she parted with it she should divide the proceeds according to the original interests, after her advances were paid. Any sale by which she was divested of title and her interest in the land converted into money, was, we think, a sale within the fair intendment of the contract. It would defeat the obvious purpose and would be repugnant to the spirit of the contract to permit the defendant to retain the whole compensation received from the company, on the plea that a compulsory sale was not within the contract. The compensation awarded for the part taken was $7,500, and the part taken constituted a small and the least valuable part of the premises, and if the whole had been taken the contention of the defendant, if admitted, would justify the defendant in retaining compensation for the whole. We have assumed, thus far, that a sale, whether during the existence of the lease or at any time afterwards, was within the meaning of the contract. It is insisted, however, by the counsel for the defendant that the words " or if the premises be at any time sold " are to be restrained by the prior words providing for the case of a sale during the ten years covered by the lease. This contention is unfounded. General words following an enumeration of particulars, are sometimes under the doctrine of *ejusdem generis* held to cover only matters of the same general character of the particulars, or are treated as a comprehensive expression embracing all the things particularly enumerated. But in all cases it is a question of intention. It would be a perversion of the rule to apply it to qualify or limit a clause on its face broader than the clauses which precede it, and which

was inserted for the very purpose of creating an alternative obligation.

It is also claimed that there was no consideration for the undertaking of the defendant. The contract recites the conveyance by the sons to the mother of their interest in the land, and also the lease executed by her to the two sons, and that the conveyance to the mother was made at her request, and these recitals are followed by the covenant in question, which commences, " now, therefore, as a further agreement between said parties and in consideration of one dollar," etc. The consideration of a contract may be implied when not expressed, or may be gathered from recitals or other language used. The conveyance by the sons to the mother was a good consideration for her covenant, and the deed and covenant being parts of one transaction, the latter referring to the former, it is plain that the giving of the deed was one at least of the considerations of the covenant. The further point is taken that the covenantor was to account to the sons jointly and not severally, and that a joint action only can be maintained by the covenantees. But we think the covenant is by its true construction an undertaking with each of the covenantees to pay him his share of the proceeds. The interests of the sons in the land was several, and while they are joined as parties of the second part in the contract, the covenant is to pay " each one-fourth of all moneys received " over and above the sum specified. (*Pearce* v. *Hitchcock*, 2 N. Y. 388.) We think, also, the sale of the whole of the premises was not a condition upon which the obligation of the defendant to account depended. The liability to account existed whenever by a sale of the whole or any part of the premises, the proceeds exceeded the sum of $4,250. Any other construction would enable the defendant by reserving from the sale a small part of the premises to appropriate the entire proceeds, however much they might exceed her advances. The exceptions to the charge are not well taken. The first two are plainly untenable. The last one is based on language not used by the judge. There is doubtless some

confusion in the charge as printed, but it is clear that the judge intended to leave to the jury the question of the alleged alteration in the contract. We are of opinion that the record discloses no legal error which would justify a reversal of the judgment.

The case of Myron Doelman, argued at the same time with this case, presents but a single additional question, which arises out of the award made in the condemnation proceedings to Henry Vandermulen for his interest as lessee in the premises taken by the railroad company. The judgment in that case held the defendant liable to account to the plaintiff for one-fourth of the sum of $591.42, awarded to the lessee for the value of his leasehold interest over and above the value of improvements placed by her upon the premises. The court was authorized to find that the lease was given by the defendant after notice by the railroad company of his intention to take the land, for the purpose of diverting a part of the compensation to be obtained for the land, from herself to the lessee, another son of the defendant. We think, for the purposes of this action, this amount was justly regarded as compensation received by her.

The judgment in all the cases should be affirmed.

All concur.

Judgment affirmed.